REED *v.* NEWBERRY.

1. TRUSTS—EXPRESS TRUSTS—REMOVAL OF TRUSTEE.

   A trustee under an express trust will not be removed without some evidence of incompetency, neglect of duty, violation of trust or other cause (3 Comp. Laws 1929, § 12992).

2. SAME—PETITION FOR REMOVAL OF TRUSTEE.

   In the absence of showing of incompetency of a trustee under an express trust, his neglect of duty or violation of the trust or other cause, a petition for his removal should be dismissed (3 Comp. Laws 1929, § 12992).

3. RECEIVERS—EXPRESS TRUST—FRAUD—ISSUANCE OF STOCK.

   Order appointing receiver for defendant trustee under an express trust by which defendant was empowered to deal in oil and gas leases, operate, control and manage the affairs of the enterprise and receive a stipulated compensation monthly and which was to continue ''until such time as proper validation of the assets could be legally secured'' from the corporation and securities commission *held*, erroneous under record failing to disclose any fraud or wrongdoing on the part of the trustee or showing that the assets have been ''validated'' or that issuance of stock in proposed corporation had been approved by the commission (Comp. Laws 1929, § 9769 *et seq.*, as amended; § 12992).

4. APPEAL AND ERROR—VACATION OF ERRONEOUS ORDERS IN EQUITY SUIT WITHOUT PREJUDICE.

   Erroneous orders appointing receiver for defendant trustee and enjoining him from further acting under express trust are set aside, but without prejudice to entry of further orders upon a showing of fraud, incompetency, or failure to account for the assets and turn them over to a corporation when properly formed and requisite approval for sale of stock secured from the corporation and securities commission.

Appeal from Wayne; Smith (Frank Day), J. Submitted January 4, 1940. (Docket No. 73, Calendar No. 40,841.) Decided March 15, 1940.

Bill by Cora M. Reed against Frederick H. Newberry for an accounting of a trusteeship, an injunction and other relief. Defendant reviews orders appointing a receiver, granting an injunction and authorizing assignment of property by appeal in the nature of mandamus. Reversed.

*John G. Cross (Bland Pugh, Slyfield, Hartman, Mercer & Reitz, and Robert F. Manogg,* of counsel), for plaintiff.

*Edward A. Rich,* for defendant.

BUTZEL, J. Prior to August 17, 1938, approximately 140 parties had acquired direct or indirect interests in certain oil and gas leases covering approximately 40,000 acres of land in St. Clair, Macomb, Allegan, Van Buren and Kalamazoo counties. Apparently the investors turned over funds to certain individuals who acquired oil and gas leases, perhaps with the idea of becoming joint adventurers. The record does not disclose just what was the particular interest of each, and the matter is of no importance to the present case. Difficulties were encountered in directing the enterprise. They had been forced to move their office on account of nonpayment of rent. There was also a serious question of violation of the blue sky law of Michigan by the individuals who held the leases. They found it advisable to put their affairs in order so that they could lawfully dispose of, operate, and make other disposition of the leases as they saw fit, or to turn them over to a corporation which could operate legally in conformity to the blue sky law (2 Comp. Laws 1929, § 9769 *et seq.,* and amendments thereto [Stat. Ann. § 19.741 *et seq.*]), and to do so they executed a trust agreement whereby the leases were

conveyed to defendant Frederick H. Newberry. Under the agreement, defendant was given the right to transact business, buy, sell or transfer any of the leasehold interests, hire necessary help, pay debts that had been incurred, and to operate, control and manage the affairs of the enterprise. He was to receive a compensation of $300 per month. A provision of the trust agreement reads as follows:

"It is further agreed and understood, by and between the parties hereto, that this trusteeship shall continue until such time and until, the affairs of all the parties hereto are in liquid condition, and until such time as proper validation of the assets can be legally secured from the corporation and securities division of the State of Michigan, and at which time it is the intent of all of the parties to cause a corporation to be formed under the laws of the State of Michigan, and to issue stock in accordance with the amounts invested and listed in this agreement to each individual party. It is further agreed that this trusteeship shall continue in operation, and in any event, and can only be changed, or voided, or dissolved by a two-thirds majority of all of the parties hereto in meeting assembled, and that notices for such purpose shall be sent to the last known address of each and every party hereto by registered mail, at least five days prior to said meeting, with proper postage affixed, with return receipt of the addressee demanded, and to be deposited in the post office in the city of Detroit, county of Wayne, State of Michigan."

On August 1, 1939, Cora M. Reed, plaintiff, filed a bill of complaint charging that the defendant trustee had refused to render a proper account; that he had suffered and permitted approximately three-fourths of the gas and oil leases to become a total loss; and that he "wrongfully profited individually and personally, by his manipulation of the trust

assets and leases and by his acquiring said leases, or interests therein, after they had been abandoned or otherwise disposed of." She also charged misappropriation, and that such statements as had been furnished contained "improper, illegal, false or fraudulent" items. Most of the charges of wrongdoing were based solely on information and belief. She further alleged that the main purpose of the trust agreement was to appoint a trustee to hold the property "only until a proper validation of the assets of said trust could be legally secured from the corporation and securities commission of the State of Michigan and a corporation formed under the laws of Michigan and stock issued" in accordance with the amounts invested, as listed in the agreement showing each party's interest. It was further alleged that such validation had been secured from the corporation and securities commission, but that defendant, however, refused to execute the necessary papers although he had previously approved them, and that in the meantime he continued to draw the salary of $300 per month as provided in the agreement. An order to show cause why the prayer of the bill should not be granted, embodying in it a restraining order, was issued upon the filing of the bill of complaint. Defendant filed a sworn answer in which he denied all charges of misappropriation, misconduct, et cetera. He stated that there were a large number of rentals about to become due, and on account of the condition of the trust estate, and after a careful survey of the entire situation, he had given an option to one Mytinger, of Fenton, Michigan, for the purchase of approximately 9,000 acres at $1 per acre, the optionee to pay the accruing rentals on the leases. He alleged that the sum of $2,500 in rents was accruing and that it was necessary to sell the leases to prevent lapse through nonpayment of rentals.

About two weeks after the filing of the bill, testimony was taken on the order to show cause. No fraud whatsoever was shown in the option of 8,329 acres to Mytinger at $1 an acre plus the rental to become due thereon. It further appeared that the defendant retained about 1,000 acres checkerboarded in the acreage optioned to insure enhancement of the trust in the event that oil and gas were successfully developed by the optionee. Moreover, it developed that the trust estate was in bad shape financially. It owed debts and had insufficient money on hand to pay its maturing and matured obligations. While plaintiff testified that she was unable to obtain necessary information showing the status of the enterprise, the testimony of an associate of an attorney who had previously represented her indicated to the contrary, that defendant co-operated, gave access to the books and records, and in general gave any information that he had.

The record discloses that other interested parties intervened, charging defendant with failure to comply with the agreement in respect to organization of the corporation and transferring the trust corpus to it. Their attorney, in open court, expressly disclaimed any fraud on defendant's part. Articles of incorporation of the Brown Gas & Oil Corporation, signed by the defendant and four others on August 4, 1939, bore the following stamp: "Filed August 10, 1939. Michigan Corporation & Securities Commission." While the question of compliance with the blue sky law is not before us now, it appears that the parties to the trust agreement saw the necessity of having the approval of the securities commission, and therefore provided that the trust was to continue until such approval would be granted.

At the hearing before the trial judge, the following occurred:

*"Mr. Rich:* Well, your honor, do you care to hear from me?"

*"The Court:* Oh, yes, but I wanted you to hear what I had to say first, that is all. I just wanted you to know what I had in mind, Mr. Rich, before you talked.

*"Mr. Rich:* Well, I believe your honor expressed your views the other day, with this exception: Except that I understood your honor to say this, and that is, that we had shown cause why a receiver should not be appointed, and we had shown cause why an injunction should not continue.

*"The Court:* I think that is true.

*"Mr. Rich:* Yes, now, then, your honor has stated, as I recall the other day, that in the absence of any showing of fraud, that you couldn't see where you would have any jurisdiction to appoint a receiver.

*"The Court:* That is true.

*"The Court:* Well, gentlemen, I have another case coming on here at 12 o'clock, and if you can't agree upon anything, we will have to adjourn it.

*"Mr. Pugh:* Well, I can't come in Monday afternoon, because I have an appointment in Lansing. I can come in here at any time up until a quarter of 12 o'clock on Monday, but I have to leave the city of Detroit at a quarter to 12.

*"The Court:* Well, I will say that the validation of the assets was undoubtedly approved at Lansing, and unless you have something else in mind, I will appoint a receiver.

*"Mr. Rich:* Well, just a minute, your honor please. Do you think there is sufficient testimony here to warrant that?

*"The Court:* Yes, I do think so.

*"Mr. Rich:* Well, your honor, I would like to first bring in the securities commissioner, or someone from the commission, before you rule on that.

"*The Court:* All right, bring them in Monday.

"*Mr. Pugh:* Your honor, there are rentals on leases due today, and Dr. Newberry says there is no money to pay it.

"*The Court:* Well, I am holding Dr. Newberry responsible in the meantime, unless you want me to appoint a temporary receiver now. Whom do you want appointed as temporary receiver?

"*Mr. Pugh:* Well, Mrs. Reed is all right, your honor.

"*The Court:* All right, I will appoint her as temporary receiver. How much bond do you want on her?

"*Mr. Pugh:* Well, I think a thousand dollar bond would be all right."

Thus the court agreed that defendant had shown cause why a receiver should not be appointed and why an injunction should not continue, but nevertheless stated that "validation of the assets was undoubtedly approved at Lansing," and that "unless you have something else in mind, I will appoint a receiver." Thereupon, he proceeded to appoint plaintiff temporary receiver, and on August 22, 1939, plaintiff was appointed receiver with full power exercised by a receiver, and defendant was restrained from all further activities under the trust agreement. No provision was made for the amount due defendant for salary or for the payment of debts he had incurred. Claim of appeal was filed on September 1, 1939, and on September 18th, a stay was ordered by this court. On September 14, 1939, on motion of plaintiff without advance notice to defendant, plaintiff as receiver was authorized to turn over all the property to the Brown Gas & Oil Corporation.

Section 12992, 3 Comp. Laws 1929 (Stat. Ann. § 26.76), provides:

"Upon the petition or bill of any person interested in the execution of an express trust, and under such regulations as shall be established by the court for that purpose, the court of chancery may remove any trustee who shall have violated or threatened to violate his trust, or who shall be insolvent, or whose insolvency shall be apprehended, or who, for any other cause, shall be deemed an unsuitable person to execute the trust."

We have held that a trustee under an express trust will not be removed without some evidence of incompetency, neglect of duty, violation of trust or other cause. In the absence of such a showing, the petition for his removal should be dismissed. *In re Petition of Metropolitan Holding Co.*, 263 Mich. 36. See, also, *Preston* v. *Wilcox*, 38 Mich. 578, and *Kelsey* v. *Detroit Trust Co.*, 265 Mich. 358. An examination of the record fails to disclose any fraud or wrongdoing on the part of defendant. Nor does it show that the assets have been "validated" as required in the trust agreement or that the issuance of the stock has been approved by the Michigan corporation and securities commission. The order appointing a receiver was erroneous.

We believe, however, that the defendant should not unduly delay the formation of a corporation and the approval of the securities thereof by the corporation and securities commission, as contemplated by the trust agreement. The orders appointing a receiver and enjoining defendant as trustee from further acting under the agreement and authorizing plaintiff as receiver to turn over the assets to the corporation are set aside, but without prejudice to the entering of further orders upon a showing of fraud or incompetency on the part of the trustee or his failure properly to account for the assets and turn them over to a corporation when

properly formed and the requisite approval has been granted by the Michigan corporation and securities commission. It is so ordered. The defendant will recover costs.

Bushnell, C. J., and Sharpe, Potter, Chandler, North, McAllister, and Wiest, JJ., concurred.