# STATE OF MICHIGAN

# COURT OF APPEALS

JANICE M. DOLLEN,

        Plaintiff-Appellee,

v

JACK D. DOLLEN,

        Defendant-Appellant.

UNPUBLISHED
November 13, 2014

Nos. 316457 & 318813
Clare Circuit Court
LC No. 11-900274-DM

Before: OWENS, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

In these consolidated appeals, defendant appeals as of right in Docket No. 316457, the December 19, 2012 divorce judgment. In Docket No. 318813, defendant appeals as of right the trial court's order denying his objections to garnishment. In Docket No. 316457, we affirm in part, but remand for the trial court to explain its distribution of property. In Docket No. 318813, we affirm.

## I. DOCKET NO. 316457

## A. PRENUPTIAL AGREEMENT

In Docket No. 316457, defendant first argues that the trial court erred by finding that the prenuptial agreement was invalid. We disagree. We review for an abuse of discretion a trial court's refusal to enforce a prenuptial agreement. *Woodington v Shokoohi*, 288 Mich App 352, 372; 792 NW2d 63 (2010), citing *Rinvelt v Rinvelt*, 190 Mich App 372, 382; 475 NW2d 478 (1991). A trial court abuses its discretion when its decision is outside the range of principled outcomes.

Michigan recognizes prenuptial agreements that govern the division of property in the event of a divorce. *Reed v Reed*, 265 Mich App 131, 142; 693 NW2d 825 (2005). The rationale behind allowing prenuptial agreements in the event of divorce is to provide people "with the opportunity to ensure predictability, plan their future with more security, and, most importantly, decide their own destiny. Moreover, allowing couples to think through the financial aspects of their marriage beforehand can only foster strength and permanency in that relationship." *Rinvelt*, 190 Mich App at 381 (quotation marks and citations omitted). Generally, courts should enforce a prenuptial agreement, unless certain standards of fairness are not satisfied. *Reed*, 265 Mich at 142. A prenuptial agreement "must be fair, equitable, and reasonable in view of the surrounding

-1-

facts and circumstances." *In re Benker's Estate*, 416 Mich 681, 689; 331 NW2d 193 (1982).[1] "A prenuptial agreement may be voided (1) when obtained through fraud, duress, mistake, or misrepresentation or nondisclosure of material fact, (2) if it was unconscionable when executed, or (3) when the facts and circumstances are so changed since the agreement was executed that its enforcement would be unfair and unreasonable." *Reed*, 265 Mich App at 142-143, citing *Rinvelt*, 190 Mich App at 380. The party challenging the agreement, in this case plaintiff, "bears the burden of proof and persuasion." *Rinvelt*, 190 Mich App at 382.

For an agreement to be voided based on nondisclosure of material fact, in this case nondisclosure of business assets, the party challenging the agreement must show that the other party did not fairly disclose his or her assets. *Benker's Estate*, 416 Mich at 690-691. A prenuptial agreement "must be entered into voluntarily by both parties, with each understanding his or her rights and the extent of the waiver of such rights." *Id.* at 689. A prenuptial agreement "give[s] rise to a special duty of disclosure not required in ordinary contract relationships so that the parties will be fully informed before entering into such agreements." *Id.*

In some cases, there can be a rebuttable presumption of nondisclosure where the facts are as follows:

> One, the antenuptial agreement provides for a complete waiver of all rights of inheritance and rights of election by the widow and does not make any provision for her upon her husband's death. Two, the husband's estate is very ample in comparison to the wife's. Three, the decedent was shown to be rather secretive about his financial affairs, lived very modestly, and gave no outward appearance of his wealth. Four, the agreement makes no reference whatsoever, in general or specific terms, to whether the parties had been fully informed of the property interests held by each other. Five, the widow was not represented by independent counsel. Six, the attorney who drafted the subject agreement testified in a deposition as to his normal procedure in such a matter and stated that he normally would discuss the assets of the parties, but that he did not press the full disclosure matter. Seven, the scrivener testified that he was not concerned with what the widow would get. [*Benker's Estate*, 416 Mich at 693, 699.]

In this case, the trial court did not abuse its discretion by finding the PA invalid because plaintiff met her burden of showing that defendant did not fairly disclose his assets. A review of the above factors indicates that there is a presumption of nondisclosure. One, the prenuptial agreement provided for complete waiver of plaintiff's inheritance rights in defendant's estate. Two, defendant's estate was very ample compared to plaintiff's estate. Three, there was testimony that defendant was rather secretive about his financial affairs. The parties lived separate financial lives, and plaintiff would often have to reimburse defendant for shared household expenses. Additionally, the prenuptial agreement itself is silent regarding the value of

---

[1] Although *Benker's Estate* addresses prenuptial agreement in the event of the death of one of the parties, this Court extended those principles to prenuptial agreements contemplating divorce. *Rinvelt*, 190 Mich App at 379.

defendant's business. Four, there was no indication in the prenuptial agreement whether the parties were fully informed of the assets held by each other. Although the prenuptial agreement stated that the parties wished to keep their property separate and provided a list of assets, there was no indication whether that list was complete, especially given the lack of information regarding defendant's assets. Five, plaintiff was not represented by independent counsel. As for factors six and seven, they are not applicable to this case. Nevertheless, five of the seven factors weigh in favor of the presumption of nondisclosure.

Although the presumption of nondisclosure is a rebuttable presumption, defendant did not provide evidence sufficient to show he fairly disclosed his assets. Defendant argued that his business bank accounts and personal bank accounts were identical, and the values listed for his personal bank accounts were sufficient to account for his business assets. However, the accounts under business and personal are not specifically identified as being the same. Rather, the business accounts state "First Bank-checking account general fund" and "Chemical Bank-checking account for taxes." And the personal accounts state "Chemical Bank-checking account" and "First Bank-checking account." Further, defendant was unable to specifically account for the $43,000 company loan he had listed under his assets. When originally questioned, defendant stated that he could not recall whether that was a debt or an asset and that he would have to retrace his financials to know for sure. Moreover, defendant listed real estate located at 416 South Clare Avenue as entirely business property, but evidence showed that this property was also used as his primary residence and became the residence where he and plaintiff raised their family.

Defendant relies on *Reed* to argue that failure to fully disclose his assets is immaterial. In *Reed*, it was undisputed at the time the agreement was entered into that the parties were young professionals just starting their careers and had little assets. *Reed*, 265 Mich at 148-149. Even the plaintiff conceded that fact. *Id.* at 149. However, in this case, the parties were previously married and each had their own assets, including bank accounts and real estate. Further, in *Reed*, the plaintiff did "not claim that any alleged discrepancy between defendant's disclosure of assets and the true state of his net worth at the time of the agreement had any effect whatsoever on her entering into the prenuptial agreement." *Id.* Thus, this Court held that even if the defendant failed to fully disclose his assets, it "was immaterial when viewed in light of the parties' relatively small estate when they married" and did not offend the "fairness doctrine." *Id.*, citing *Benker's Estate*, 416 Mich at 689-691. But, in this case, plaintiff did allege that when she entered into the prenuptial agreement, she did not have a thorough understanding of the nature of the business, its value, or its income, and that information would have affected her decision to enter into the prenuptial agreement. And, defendant's estate was not relatively small. Defendant likely had substantial assets given all the property he maintained, and failure to disclose the extent of those assets did not provide plaintiff with a clear understanding of the extent of the rights she was waiving, therefore offending the fairness doctrine. Based on the foregoing, we conclude that the trial court's decision to invalidate the prenuptial agreement was not outside the range of principled outcomes.

## B. ATTORNEY FEES

Next, defendant argues that the trial court erred by awarding plaintiff attorney fees. We disagree. We review for an abuse of discretion a trial court's decision to award attorney fees in a

divorce action. *Woodington*, 288 Mich App at 369. We review for clear error the findings of fact on which the trial court bases its decision. *Id.*

Defendant does not challenge the reasonableness of the award. Rather, he argues that an award of attorney fees based on his refusal to concede that the prenuptial agreement was invalid was erroneous. However, the trial court did not award attorney fees based solely on defendant's refusal to accept that the prenuptial agreement was invalid. Instead, the trial court appears to have awarded plaintiff $7,500 based primarily on defendant's obstructive conduct during the proceedings, causing plaintiff to incur higher fees. Although the trial court did state that defendant refused to accept that the prenuptial agreement was invalid, a reading of the record indicates that the trial court was more displeased with defendant's conduct throughout the proceedings, and that is why it chose to award plaintiff attorney fees.

This Court has held that "an award of legal fees is authorized where the party requesting payment of the fees has been forced to incur them as a result of the other party's unreasonable conduct in the course of litigation." *Stackhouse v Stackhouse*, 193 Mich App 437, 445; 484 NW2d 723 (1992). See also *Hanaway v Hanaway*, 208 Mich App 278, 298; 527 NW2d 792 (1995). And pursuant to MCL 552.13, in a divorce action, the trial court may require a party "to pay any sums necessary to enable the adverse party to carry on or defend the action." See also *Stackhouse*, 193 Mich App at 445, citing MCL 552.13 ("A party to a divorce action may be ordered to pay the other party's reasonable attorney fees if the record supports a finding that such financial assistance is necessary to enable the other party to defend or prosecute the action."). Thus, the trial court's decision to award plaintiff attorney fees based primarily on defendant's obstructive conduct was not an abuse of discretion.

## C. CLASSIFICATION OF PROPERTY

Next, defendant argues that the trial court erred by finding that the residence located at 416 South Clare and the lake house at Budd Lake were marital property, even though defendant purchased them before the marriage. We disagree. "The trial court's factual findings will not be reversed unless they are clearly erroneous, i.e., if this Court is left with the definite and firm conviction that a mistake has been made." *Reed*, 265 Mich App at 150. "If this Court upholds the trial court's findings of fact, it must then decide whether the dispositional ruling was fair and equitable in light of those facts." *Id.* "The trial court's dispositional ruling is discretionary and will be affirmed unless this Court is left with the firm conviction that it was inequitable." *Id.*

When dividing property in a divorce action, the first thing a trial court must do is determine what property is marital property and what property is separate property. *Reeves v Reeves*, 226 Mich App 490, 493-493; 575 NW2d 1 (1997). "Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage." *Cunningham v Cunningham*, 289 Mich App 195, 201; 795 NW2d 826 (2010). However, separate assets can lose their character as separate property if they are commingled with marital assets and treated as marital property. *Id.*, citing *Pickering v Pickering*, 268 Mich App 1, 10-12; 706 NW2d 835 (2005). "The mere fact that property may be held jointly or individually is not necessarily dispositive of whether the property is classified as separate or marital." *Id.* at 201-202. Rather, an asset's character is determined by looking at the actions of the parties. *Id.* at 209.

It is undisputed that defendant purchased the primary residence at 416 South Clare and the lake house at Budd Lake before the marriage. However, the record shows that these separate assets lost their character as separate property because they were treated as marital property throughout the marriage. The parties were married for 16 years, and with the exception of the first year of marriage where they resided at the lake house, they resided with their children at the Clare house for the entire marriage. During the summer months, the parties and their children lived at the lake house. Plaintiff sold her house in Wyoming to move to the Clare house. When the marriage began to deteriorate in 2008, defendant moved to another house he owned, while plaintiff and the children continued to reside at the Clare house and use the lake house in the summer. There was testimony that plaintiff was primarily responsible for the domestic duties, such as cleaning, cooking, and overall maintenance of the properties.

Moreover, there was evidence that plaintiff paid for renovations at both properties. Plaintiff estimated that the Clare house renovations cost approximately $10,000 and the lake house renovations cost approximately $6,600. Plaintiff testified that she did room-by-room renovations at the Clare house, which included new dry wall, showers, vanities, mirrors, electrical work, painting, appliances, and flooring. Although defendant claimed that he reimbursed plaintiff for these expenses, plaintiff testified to the contrary. It is well established that credibility determinations are for the trial court to decide. *Berger v Berger*, 277 Mich App 700, 715; 747 NW2d 336 (2008). As far as renovations to the lake house, plaintiff testified that she contributed to a new steel roof, paid for exterior painting (multiple times), stained the deck, replaced the carpet, painted, and made extensive interior updates. She was also responsible for yard work, repairs, painting, and other cosmetic fixes at the lake house. The record indicates that plaintiff cared for the two properties more than defendant did, and the parties treated the properties as marital assets, particularly since they were used as family homes. Plaintiff's testimony supports the trial court's findings, and thus, they were not clearly erroneous. Further, those findings support the trial court's disposition, and based on this record, there is no indication that the ruling was inequitable.

## D. DIVISION OF MARITAL ESTATE

Finally, in Docket No. 316457, defendant argues that the trial court did not equitably divide the marital estate. Because the trial court's factual findings are inadequate for this Court to determine whether the property division was equitable, we remand to the trial court for further findings.

When dividing property, each party first takes away from the marriage their "own separate property with no invasion by the other party." *Cunningham*, 289 Mich App at 201. Then, the trial court must "apportion the marital estate between the parties in a manner that is equitable in light of all the circumstances." *Id.* "To reach an equitable division of marital property, a trial court should consider the duration of the marriage, the contribution of each party to the marital estate, each party's station in life, each party's earning ability, each party's age, health and needs, fault or past misconduct, and any other equitable circumstance." *Woodington*, 288 Mich App at 363. "The trial court need not achieve mathematical equality, but the trial court must clearly explain divergence from congruence." *Reed*, 265 Mich App at 152. Further, "A trial court must make specific findings of fact regarding the value of each disputed piece of marital property awarded to each party in the judgment." *Id.* at 364. "A trial court's findings of

fact are inadequate if they are not sufficiently specific to enable the parties to determine the approximate values of their individual awards by consulting the verdict along with the valuations to which they stipulated." *Id.*

On this record, the trial court's findings of fact are inadequate for this Court to determine whether the property division was equitable. The divorce judgment indicates that plaintiff retained a Vanguard investment account, which the parties indicate was valued at approximately $70,000. Defendant argues that retention of this account by plaintiff resulted in an inequitable distribution. However, the trial court did not reference this account in its oral opinion and did not indicate whether it considered the account to be marital or separate property.

Further, in its oral opinion, the trial court stated that the marital estate totaled $767,114. The trial court determined that the estate included the following: the property at 416 S. Clare valued at $164,500; the lake house valued at $86,500; personal property valued at $27,985; defendant's China money valued at $321,000; and two of plaintiff's Vanguard investment accounts valued at $26,119 and $19,533. This property totaled $645,637. The trial court also included plaintiff's 401(K) through her previous employer, Steelcase, in the marital estate, but did not provide a value. It appears that the parties agreed that the value was $87,538, but including this agreed-upon value only brings the total marital estate to $733,175. The 401(K) was worth an additional $22,000, which the parties seemed to agree was plaintiff's separate property, but even if we were to include this in the calculation, the marital estate was only worth $755,175. This total is still short of the $767,114 that the trial court calculated.

Moreover, in the proposed findings of fact and conclusions of law, both parties identified bank accounts as being marital assets, but there is no indication whether these were included in the marital estate. Accordingly, based on this record, this Court cannot determine whether the division of property was equitable.

II. DOCKET NO. 318813

A. GARNISHMENT

In Docket No. 318813, defendant first argues that the trial erred by denying his objections to garnishment as to social security funds contained in his Firstbank account. We disagree.

Pursuant to 42 USC 407(a), social security benefits may not be garnished. Money received as social security benefits is not subject to garnishment even after it has been received and deposited into the recipient's bank account. *Whitwood, Inc v South Blvd Prop Mgt Co*, 265 Mich App 651, 654; 701 NW2d 747 (2005). However, the social security benefits, once deposited must retain the "quality of monies," i.e., "remain subject to demand and use as the needs of the beneficiary for support and maintenance require." *Asset Acceptance Corp v Hughes*, 268 Mich App 57, 60; 706 NW2d 446 (2005). It is also imperative that the funds be identifiable. See *id.* at 60-61 (finding that once the funds changed hands and became

intermingled with other funds, they lost their ability to be traced back to any one individual).[2] Further, MCR 3.101(I)(6) provides, "A bank or other financial institution, as garnishee, shall not withhold exempt funds of the debtor from an account into which only exempt funds are directly deposited and where such funds are *clearly identifiable* upon deposit as exempt Social Security benefits . . . ." (Emphasis added). Therefore, while defendant's contention is true—that social security funds commingled in a bank account are exempt from garnishment—defendant overlooks the requirement that those funds must be identifiable, or reasonably traceable.

In this case, defendant was unable to provide documentation showing that the social security benefits were actually in his Firstbank account. To support his objections to garnishment, defendant provided "snapshots" of the social security deposits made into one of his Firstbank savings accounts and the balances of his four accounts with Firstbank. The snapshots show that defendant had various deposits from the "SSA Treas" into the same Firstbank savings account from October 3, 2012 to September 5, 2013, totaling approximately $10,000. However, on the same day or the day after the deposits were made, defendant transferred the exact same amount into another one of his accounts, presumably a checking account. There is no indication where the money went once deposited into this other account and whether it stayed in that account given that the balance fluctuated, and by September 5, 2013, there was only $868.34 remaining. The balance on January 23, 2013 was approximately $31,000. Thus, when defendant filed his objections to garnishment on September 12, 2013, the approximately $10,000 in social security benefits that defendant had received and transferred were clearly gone. Based on this record, there is no indication that any of the monies in defendant's accounts were social security funds, and defendant has failed to prove otherwise. Therefore, the trial court did not err by denying defendant's objections to garnishment as to the approximately $10,000 in social security benefits he received.

Second, defendant argues that the trial court erred by denying his motion to quash garnishment because the payment could only be secured by a judicial lien and garnishment was not applicable to divorce judgments. We disagree.

We note that the parties' argument over the applicability of MCL 600.2819 is irrelevant where caselaw makes clear that garnishment is a proper tool to enforce payment provisions of a divorce judgment. See *Landy v Landy*, 131 Mich App 519, 522; 345 NW2d 720 (1984). In

---

[2] Notably, as plaintiff points out, the cases defendant relies on to support his position actually require the social security benefits to be identifiable. See *NCNB Financial Servs, Inc v Shumate*, 829 F Supp 178, 181 (1993) (finding that although social security benefits are protected even if commingled in a bank account with other funds, the social security benefits must be reasonably traceable; thus, under the first in, first out, accounting method, it was clear that the party withdrew amounts exceeding the social security benefits and was not entitled to protection). See also *S & S Diversified Servs, LLC v Taylor*, 897 F Supp 549 (1995) (stating that the commingled social security benefits must be readily traceable); *Dean v Fred's Towing*, 801 P2d 579 (1990) (stating that social security benefits deposited in a bank account are exempt from garnishment, provided that they are reasonably traceable).

*Landy*, citing voluminous Supreme Court precedent, this Court stated, "Our Supreme Court has clearly held that a court which grants a divorce has the power to make a judgment for money which is subject to execution for its satisfaction." *Id.* at 521-522. This Court further stated, "Any barriers to seeking execution without bringing an independent action for a money judgment, were brought down by the merger of law and equity." *Id.* at 522 (citations omitted). This Court went on to state, "A divorce judgment containing a money judgment need not state specifically that the money judgment may be enforced by execution. The right to execute is implicit in any judgment for money." *Id.* (citations omitted).

Further, this Court in *Lawrence v Lawrence*, 150 Mich App 29, 34; 388 NW2d 291 (1986),[3] explained, "A lien simply gives some additional assurance to the party that he or she will be paid. A lien or a provision calling for the payment of money in no way alters the nature of the judgment to something other than a divorce judgment." Finally, MCL 600.11 "provides circuit courts with jurisdiction and power to make any order property to fully effectuate the circuit courts' jurisdiction and judgments." *Walworth v Wimmer*, 200 Mich App 562, 564; 504 NW2d 708 (1993). And a court rendering a divorce judgment "will do what is necessary to accord complete equity and to conclude the controversy." *Id.*

Accordingly, defendant's argument is without merit. Although the divorce judgment stated that the monetary award would be secured by a judicial lien, as stated in *Lawrence*, this was simply a way for the trial court to provide plaintiff with additional assurance. By no means does this foreclose garnishment as a way to enforce the judgment. Contrary to defendant's argument, caselaw is clear that the divorce judgment does not have to specifically state that the monetary award may be enforced by garnishment. Rather, it is an implicit right in any judgment of money. Therefore, the trial court did not err by denying defendant's motion to quash garnishment.

## B. SANCTIONS

Finally, defendant argues that the trial court erred by awarding plaintiff sanctions and by finding that the motion to quash garnishment was frivolous. We disagree.

MCR 2.114(D) provides that the signature of an attorney or party constitutes certification that:

(1) he or she has read the document;

(2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

---

[3] *Lawrence* addressed whether a divorce judgment providing for property distribution was a money judgment in a civil action as contemplated by MCL 600.6013, so that a trial court could award interest pursuant to that statute.

(3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

MCR 2.114(E) permits the trial court to impose sanctions, such as reasonable expenses incurred by the other party, if a document is signed in violation of MCR 2.114(D). A trial court may impose sanctions where a party "asserts claims without any reasonable basis in law or fact for those claims." *Robert A Hansen Family Trust v FGH Indus, LLC*, 279 Mich App 468, 486; 760 NW2d 526 (2008).

Defendant asserts that the trial court never found that defendant's primary purpose in moving to quash garnishment was to harass, embarrass, or injure the prevailing party. However, MCR 2.114(E) does not require the trial court to make specific findings of fact and conclusions of law. See MCR 2.517(A)(4) ("[F]indings of fact and conclusions of law are unnecessary in decisions on motions unless findings are required by a particular rule.").

Defendant relied on case law interpreting MCL 600.6013 to argue that a divorce judgment was not a money judgment. However, that statute was clearly not applicable to the current case, as it governs interest on a money judgment in a civil action. The cases defendant cited simply held that a divorce judgment was not a money judgment *in a civil action* contemplated under MCL 600.6013. The cases did not at all state that a divorce judgment was not a money judgment. Further, in reviewing the financial "snapshots" defendant attached to his motion to quash garnishment, it is clear that the approximate $10,000 in social security benefits were spent before defendant moved to quash the garnishment. Therefore, the trial court did not err by awarding sanctions, as defendant motion's was not grounded in law or fact.

## III. CONCLUSION

In Docket No. 316457, we affirm in part, but remand for the trial court to explain its distribution of property. Specifically, we direct the trial court to identify whether the property distributed in the divorce judgment was separate or marital property and to assign values to the property so this Court can determine the values of the individual awards and whether the division was equitable. We retain jurisdiction. In Docket No. 318813, we affirm.

/s/ Donald S. Owens
/s/ Jane E. Markey
/s/ Deborah A. Servitto

-9-

# Court of Appeals, State of Michigan

## ORDER

Janice M Dollen v Jack D Dollen

Docket No. 316457

LC No. 11-900274-DM

Donald S. Owens
Presiding Judge

Jane E. Markey

Deborah A. Servitto
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall be completed within 90 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, the trial court is directed to identify whether the property distributed in the divorce judgment was separate or marital property and to assign values to the property so this Court can determine the values of the individual awards and whether the division was equitable. The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

NOV 13 2014

Date

Chief Clerk