*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ADW, minor.

AMBER MILLION,

Petitioner-Appellee,

v

DALE WARNER,

Respondent-Appellant.

FOR PUBLICATION
March 14, 2024
9:10 a.m.

No. 368361
Lenawee Probate Court
LC No. 23-052933-GM

Before: FEENEY, P.J., and REDFORD and YATES, JJ.

YATES, J.

In this minor-guardianship proceeding under MCL 700.5204(2)(b), which is contained in the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, the probate court chose to appoint the son of respondent Dale Warner (Dale) as temporary guardian for ADW, who is the daughter of Dale and his missing wife, Dee Warner (Dee). The probate court further ordered that ADW should have visits with Dee's children from a prior relationship, including petitioner, Amber Million (Amber). Dale contends the probate court lacked subject-matter jurisdiction to enter those orders and violated his constitutional rights as a parent by ordering that ADW should have visits with Dee's children from a prior relationship. We affirm the probate court's decision to exercise jurisdiction under MCL 700.5204(2)(b), but we reverse the order requiring ADW to participate in visits with her maternal siblings.

## I. FACTUAL BACKGROUND

After Dale and Dee both had children from earlier relationships with others, they married. In 2012, they had a daughter, ADW, who is the subject of this proceeding. The evidence indicates that ADW had good relationships with Dee's children, but Dee disappeared on April 24, 2021, and then those relationships became strained because Dee's children thought that Dale was responsible for Dee's disappearance. ADW, who was nine years old at the time, began living exclusively with Dale in the wake of Dee's disappearance, and Dale prevented ADW from having any contact with

Dee's children. After ADW started attending counseling in 2022, her therapist described ADW as "well cared for" and "strongly bonded" with Dale. The therapist opined that, because of "the contention between" Dee's children and Dale, it was not in ADW's best interests to have "face to face, in person contact with her maternal half siblings."

On May 3, 2022, Dale executed an "Appointment of Guardian and Conservator for Minor Child of Dale J. Warner" stating: "If for any reason I fail to serve, I request that the Court appoint my son, Jaron D. Warner, . . . as guardian and conservator for my minor daughter, [ADW]." Then, on September 12, 2023, Dale executed a "Consent to Treat Minor Children" form that permitted a doctor to make decisions about ADW's medical care from September 12, 2023, to January 1, 2024. The timing of Dale's consent was significant because, one day later, on September 13, 2023, Dale was found in contempt of court for not cooperating with a conservatorship regarding the assets of Dee's estate and sentenced to serve 93 days in jail for that contempt.

On September 19, 2023, while Dale was in jail, Dee's adult daughter Amber filed a petition asking the probate court to appoint her as ADW's guardian. The probate court promptly appointed a lawyer-guardian ad litem (LGAL) for ADW and instructed the Department of Health and Human Services (DHHS) to review the matter. Five days later, on September 24, 2023, Dale executed a notarized power of attorney, which stated:

> I, Dale Warner, of Tecumseh, MI appoint Jaron Warner of Tipton, MI, as my agent and legal guardian of my minor child, [ADW], . . .
>
> I appoint and vest in my agent full powers as a substitute parent, giving them the authority to do anything and everything required for my child's care. I also authorize my agent to do any of the things that I, as a parent, could do on behalf of my child. I specifically authorize Jaron Warner to:
>
> (1) Consent to medical and/or dental care for my child;
>
> (2) Enroll my minor child in appropriate schools and/or educational programs;
>
> (3) Act or consent to any and all acts with respect to my child's health and well-being, except the power to consent to guardianship, adoption, or marriage.
>
> This delegation of parental powers is given pursuant to MCL 700.5103, and will become effective on the day I sign it. This power expires six (6) months from the date it begins or on my declaration, whichever comes first.

On September 29, 2023, Jaron accepted the appointment.

While Amber's petition for appointment of a minor guardian for ADW was pending in the probate court, Amanda Jones (who worked for the DHHS) spoke to Dale, Jaron, ADW, and Amber. On October 9, 2023, Jones testified that ADW wanted to have a relationship with Dee's children, but she preferred to remain in Jaron's care. Similarly, LGAL Suzanne Wilhelm stated during the hearing on October 9, 2023, that ADW has "a really good bond with her brother" Jaron. Although ADW "also loves her maternal siblings," ADW "hasn't actually interacted with them in a couple years" because Dale "has thwarted their attempts to interact with" ADW. Significantly, ADW told

-2-

the LGAL that it "would hurt her brain way too much to move in with her sister" Amber, so ADW wanted to stay where she was. Nevertheless, the LGAL explained that ADW "needs to have this relationship with her . . . maternal adult siblings."

After the LGAL spoke and the DHHS representative testified at the hearing on October 9, 2023, the court invited the attorneys for Dale and Amber to present their competing arguments on the issue of guardianship for ADW. The court then addressed the petition for minor guardianship in a ruling from the bench. First, the court explained that, despite the documents Dale had signed, when Amber filed her petition on September 19, 2023, "there was no valid execution of a [p]ower of [a]ttorney that would, in fact, allow for legal enforcement." Second, the court ordered "that a temporary guardianship will be issued for [ADW]," and "it will be with the person who has been providing that care for her since the incarceration of Dale Warner," specifically, Dale's son, Jaron. Third, the court chose to "follow the recommendations made by our LGAL" for ADW "to be able to visit with both sides of the family," but left open the issue of how best to accomplish that goal. Finally, the court scheduled a hearing on November 30, 2023, to consider whether to modify or to render more permanent the temporary minor guardianship.

On October 11, 2023, the probate court memorialized its rulings in an order that appointed Jaron as the temporary minor guardian for ADW, but set forth an expiration date of November 30, 2023. One day later, Jaron accepted the appointment along with letters of temporary guardianship from the court. Next, the issue of ADW's visits with Dee's adult children was resolved in an order rendered on October 25, 2023, that directed Jaron to contact Brenea Moore to enable her "to make recommendations regarding the [o]rdered supervised visitation between [ADW] and her maternal siblings at the earliest available time Ms. Moore offers." That order decreed "that as soon as Ms. Moore has conducted her initial appointment with [ADW] and makes recommendations regarding supervised visits," the "supervised visits shall immediately commence[.]"

What happened after the entry of the order on October 25, 2023, is murky. Dale wrote in an emergency petition to terminate the guardianship filed on November 7, 2023, that he had been "released from [the] Lenawee County Jail." But Dale's freedom was short-lived. He was charged with murdering Dee, arrested on that charge, and detained on a $15 million bond before the hearing in the guardianship case scheduled for November 30, 2023. Unfortunately, we cannot tell what, if anything, happened in the probate matter on November 30, 2023, but the circumstances known to this Court leave no doubt that Dale is not able to provide care and maintenance for ADW. Despite that fact, Dale has appealed the probate-court orders entered on October 11 and 25, 2023, asserting that both of those orders must be vacated on jurisdictional and constitutional grounds.

## II. LEGAL ANALYSIS

Dale challenges both of the probate court's orders, contending that the court lacked subject-matter jurisdiction and violated his constitutional rights as a parent. "A claim that the lower court lacks jurisdiction is a question of law, which this Court reviews de novo." *Reed v Reed*, 265 Mich App 131, 157; 693 NW2d 825 (2005). Similarly, this Court reviews constitutional issues de novo. *In re MS*, 291 Mich App 439, 442; 805 NW2d 460 (2011). In addition, this Court reviews de novo "the interpretation and application of statutes and court rules." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). But "[w]e review the probate court's findings of fact for clear error[,]" *In re Redd Guardianship*, 321 Mich App 398, 403; 909 NW2d 289 (2017), and this Court "review[s]

-3-

the probate court's dispositional rulings for an abuse of discretion." *Id.* With all of these standards in mind, we shall take up Dale's jurisdictional and constitutional challenges to the probate court's orders entered on October 11 and 25, 2023.

### A. SUBJECT-MATTER JURISDICTION

The probate court appointed a temporary guardian for ADW under MCL 700.5204(2)(b),[1] which allows the probate court to "appoint a guardian for a minor" if "[t]he parent or parents permit the minor to reside with another person and do not provide the other person with legal authority for the minor's care and maintenance, and the minor is not residing with his or her parent or parents when the petition is filed." *In re Guardianship of Versalle*, 334 Mich App 173, 181; 963 NW2d 701 (2020). To invoke that authority of the probate court, "[a] person interested in the welfare of a minor . . . may petition for the appointment of a guardian for the minor" under MCL 700.5204(1). Here, Amber filed a petition on September 19, 2023, when Dale was in jail serving a sentence for contempt of court and ADW was residing with Dale's son, Jaron. Consequently, Amber properly filed a petition as a person interested in the welfare of ADW while Dale permitted ADW to reside with Jaron, so the only potential jurisdictional defect concerns whether Dale provided Jaron "with legal authority for [ADW]'s care and maintenance." See MCL 700.5204(1). Dale asserts that he provided his son, Jaron, with sufficient legal authority over ADW by signing three documents: (1) the "Appointment of Guardian and Conservator for Minor Child of Dale J. Warner" that he signed on May 3, 2022; (2) the "Consent to Treat Minor Children" form that he signed on September 12, 2023; and (3) the "Power of Attorney for Minor Child" that he signed on September 24, 2023.

According to MCL 700.5103(1), "[b]y a properly executed power of attorney, a parent or guardian of a minor . . . may delegate to another person, for a period not exceeding 180 days, any of the parent's or guardian's powers regarding care, custody, or property of the minor child . . . ." Thus, EPIC includes a statutory method for enabling a parent to provide another person "with legal authority for the minor's care and maintenance," as contemplated by MCL 700.5204(2)(b). Here, Dale cites three separate documents to support his contention that he provided his son, Jaron, with legal authority for ADW's care and maintenance, thereby divesting the probate court of statutory authority to conduct minor-guardianship proceedings concerning ADW. We shall discuss each of those three documents in turn.

The "Appointment of Guardian and Conservator for Minor Child of Dale J. Warner," which Dale signed on May 3, 2022, simply states that: "If for any reason I fail to serve, I request that the Court appoint my son, Jaron D. Warner, . . . as guardian and conservator for my minor daughter, [ADW]." In that document, Dale did not grant Jaron authority to take care of ADW; Dale merely set forth the condition that would prompt "the Court" at a future date to appoint Jaron "as guardian

---

[1] Amber's petition asked the probate court to act pursuant to MCL 700.5204(2)(a), which provides for jurisdiction when "[t]he parental rights of both parents or the surviving parent are terminated or suspended by prior court order, by judgment of divorce or separate maintenance, by death, by judicial determination of mental incompetency, by disappearance, or by confinement in a place of detention." But the trial court's order entered on October 11, 2023, relied instead on the authority of MCL 700.5204(2)(b), so we must focus on that provision as the basis for jurisdiction.

and conservator" for ADW. And in the fullness of time, the probate court did just that. Moreover, Dale signed that document 16 months before he gave ADW to Jaron on September 13, 2023, when Dale went to jail.[2] To be sure, under EPIC, "[a] person may become a minor's guardian by parental appointment[,]" MCL 700.5201, but that document did not make such a parental appointment. To the contrary, it contemplated that "the Court" would appoint Jaron to serve as ADW's guardian.[3]

The "Consent to Treat Minor Children" that Dale signed on September 12, 2023, fares no better. In that document, Dale gave "consent to any medical care determined by a physician to be necessary for the welfare of [ADW] while said child is under the care of Jaron Warner of Tipton, MI and I am not reasonably available by telephone to give consent." Significantly, nothing in that document gave Jaron authority to do anything at all for ADW. Instead, the document allowed "a physician" to provide care to ADW based on a unilateral decision if Dale was not available to give his consent. Therefore, that document did not provide Jaron "with legal authority for the minor's care and maintenance," as contemplated by MCL 700.5204(2)(b).

Finally, five days after Amber filed the petition for appointment of a guardian that brought the matter of ADW before the probate court, Dale signed a power of attorney that gave Jaron broad powers to provide for the care and maintenance of ADW. That comprehensive grant of authority satisfied the standard for "delegation of powers by a parent" prescribed by MCL 700.5103(1), and thus undermined the contention that Dale did not provide Jaron "with legal authority for [ADW]'s care and maintenance," as contemplated by MCL 700.5204(2)(b). But by then, the probate court had been invested with jurisdiction over ADW by dint of Amber's petition filed on September 19, 2023. "[T]he Legislature intended courts to analyze the requirements [of MCL 700.5204(2)(b)] on the basis of the facts existing at the time of filing[,]" *In re Guardianship of Versalle*, 509 Mich 961, 961 (2022) (WELCH, J, concurring); see also *Guardianship of Versalle*, 334 Mich App at 186 (the analysis is based on the facts "at the time that the petition was filed"), so the power of attorney that Dale signed five days after Amber's filing of the petition did not divest the probate court of jurisdiction to conduct the guardianship proceedings. Thus, the trial court was entitled to continue proceedings concerning ADW under MCL 700.5204(2)(b) once jurisdiction existed, *Guardianship of Versalle*, 334 Mich App at 186, so Dale's jurisdictional challenge is unavailing.

## B. CONSTITUTIONAL CHALLENGES

Dale insists that the probate court impermissibly infringed upon his constitutional rights by issuing an order on October 25, 2023, directing ADW to participate in visits with Dee's children. A core principle of due process holds that parents have a constitutionally protected right "to make decisions concerning the care, custody, and control of their children." *In re Sanders*, 495 Mich

---

[2] The parties debate whether that 16-month delay rendered the document signed on May 3, 2022, inoperative under MCL 700.5103, which states that, "[b]y a properly executed power of attorney, a parent or guardian of a minor . . . may delegate to another person, for a period not exceeding 180 days, any of the parent's or guardian's powers regarding care, custody, or property of the minor child . . . ." Under our analysis, however, that debate about the document is immaterial.

[3] Under MCL 700.5201, "[a] person may become a minor's guardian by parental appointment or court appointment." The document Dale signed on May 3, 2022, required a court appointment.

394, 409; 852 NW2d 524 (2014). "[A] parent's constitutional right to raise his or her child is also applicable in the guardianship context." *Guardianship of Versalle*, 334 Mich App at 179. In this case, Dale asserts that his due-process rights, applicable in the guardianship context, entitle him to block visits between ADW and her maternal siblings. But the appointment of Dale's son, Jaron, as ADW's guardian changes the analysis in a significant manner.

According to MCL 700.5215, "[a] minor's guardian has the powers and responsibilities of a parent who is not deprived of custody of the parent's minor and unemancipated child[.]" Here, the probate court's order appointing Dale's son, Jaron, as ADW's guardian satisfied Dale's choice that Jaron should serve as ADW's guardian if Dale could not care for ADW. In his capacity as the guardian for ADW, Jaron has "the powers and responsibilities of a parent[.]" See MCL 700.5215. Those powers include the authority to prohibit visits between ADW and nearly all of her relatives. This Court said precisely that in *D'Allessandro v Ely*, 173 Mich App 788; 434 NW2d 662 (1988), where we explained: "The guardian, not the probate court, has the parental power which includes decisions over visitation. Therefore, the probate court does not have jurisdiction to enter an order concerning visitation in guardianship matters." *Id.* at 795. Much more recently, in the context of a juvenile-guardian case,[4] this Court ruled that "[t]he trial court committed a clear legal error when it determined that it had the authority to order visitation with [the child]'s paternal relatives[.]" *In re Prepodnik*, 337 Mich App 238, 243; 975 NW2d 66 (2021). Interpreting MCL 700.5215(c), this Court explained that a "guardian, like a parent, is typically provided the right to choose what third parties interact with their child or ward." *Id.* at 246. Carving out grandparents as an exception to that rule because of their statutory rights under Michigan law, see *id.* at 246-247, this Court noted: "The parties have not identified any statutes, court rules, or caselaw that suggest a relative who is not a parent or grandparent has authority to request court-ordered visitation, nor does there appear to be any." *Id.* at 247. Similarly, the probate court in this case "lacked legal authority" to enter an order directing ADW to have visits with her maternal siblings. See *id.* at 248.

Having defined the narrow limits of the probate court's authority to order visits with ADW, we nonetheless acknowledge that the LGAL and the DHHS worker both opined that visits between ADW and her maternal siblings would be in ADW's best interests. The probate court "may review a guardianship for a minor" and consider "[w]hether the guardian has adequately provided for the minor's welfare." MCL 700.5207(1)(b). A court-appointed guardian has a duty to "facilitate the ward's education and social or other activities," MCL 700.5215, and the court, at a review hearing, may address a failure to satisfy that duty by ordering "the parties to follow a court-structured plan designed to resolve the conditions identified at the review hearing." MCL 700.5207(3)(b)(*ii*)(B). To be sure, the probate court lacks the authority to require ADW to visit with her maternal siblings, but the probate court is not completely powerless to address that issue in a manner short of ordering such visits to take place. On the record before us at this point, however, we must affirm the probate

---

[4] A minor guardianship under EPIC, MCL 700.5204(2), is not the same as a juvenile guardianship under MCL 712A.19a(9)(c), which "allows the child to keep a relationship with the parent when placement with the parent is not possible." *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). The two types of guardianship, though, share many common traits. *In re Prepodnik*, 337 Mich App 238, 244; 975 NW2d 66 (2021).

court's appointment of Jaron as ADW's guardian under MCL 700.5204(2)(b), but reverse the order directing ADW to have visits with her maternal siblings.[5]

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do no retain jurisdiction.

/s/ Christopher P. Yates
/s/ Kathleen A. Feeney
/s/ James Robert Redford

---

[5] Nothing in this opinion limits the ability of Jaron, as ADW's appointed guardian, from permitting ADW to have contact—including in-person visits—with ADW's maternal siblings in any manner that he deems appropriate.