*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHARTER TOWNSHIP OF FENTON,

UNPUBLISHED
September 17, 2025
10:07 AM

Plaintiff-Appellant,

v

No. 370733
Genesee Circuit Court
LC No. 2023-118614-CH

FENTON ORCHARDS CONDOMINIUM
ASSOCIATION,

Defendant-Appellee.

Before: K. F. KELLY, P.J., and PATEL and FEENEY, JJ.

PER CURIAM.

In this property action, plaintiff-appellant, Charter Township of Fenton, appeals as of right the trial court order granting summary disposition in favor of defendant-appellee, Fenton Orchards Condominium Association. We affirm.

## I. FACTS

In 2000, M-59 Inc. (the developer), filed articles of incorporation for defendant, a Michigan nonprofit corporation, to manage, administer, and maintain the Fenton Orchards Attached Unit Condominium project. In 2001, the developer recorded the master deed for the project, which plaintiff approved, for 52 units. The master deed stated that it was governed by "the Michigan Condominium Act (being Act 59 of the Public Acts of 1978, as amended)," and it attached the project's bylaws, subdivision plan, and articles of incorporation. In May 2003, the developer recorded the first amendment to the master deed, which plaintiff approved, adding 16 units to the project. In November 2003, the developer recorded the second amendment to the master deed, which plaintiff approved, reducing the number of additional units in the first amendment from 16 to 14.

Plaintiff contends that sometime between 2007 and 2009, the developer went out of business and ceased paying taxes on units 13-20, 41-44, and 49-64, resulting in foreclosure. Accordingly, in 2011 and 2017, the Genesee County Treasurer transferred title to these units to plaintiff through tax foreclosure sales, pursuant to MCL 211.78m.

-1-

In 2018, defendant learned that plaintiff intended to sell eight of the units to a third-party developer. Defendant sent a letter to plaintiff, stating that plaintiff had no rights to the undeveloped units because they had not been withdrawn from the condominium project within the time allowed under MCL 559.167(3) (old § 67);[1] therefore, the "un-built units reverted to general common elements of the Condominium by operation of law on November 12, 2009." Defendant alternatively stated that if plaintiff did have rights to the units, plaintiff would "be liable to [defendant] for assessments or shared maintenance costs since [the time] it took title to the Units." It appears that plaintiff took no further action at that time.

In April 2022, defendant sent plaintiff a second letter explaining that it had come to defendant's "attention that [plaintiff] recently attempted to sell undeveloped Units despite any legal right to do so." Accordingly, without plaintiff's approval, defendant recorded: (1) an "Affidavit of Facts Affecting Real Property" with the Genesee County Register of Deeds, and (2) a third amendment to the master deed; both documents provided that the units plaintiff claimed title to reverted to general common elements pursuant to old § 67, leaving plaintiff with no interest in the units and extinguishing all rights to construct on or otherwise develop the land.

In March 2023, plaintiff commenced this action, seeking: (1) a declaratory judgment that units 13-20, 41-44, and 49-64 had not reverted to general common elements; (2) an order invalidating and striking the third amendment to the master deed; and (3) damages for slander of title and tortious interference with a business relationship or expectancy. Plaintiff argued that because the units at issue were not identified as "need not be built" in the condominium documents, as required under old § 67, the statute did not cause the units to revert to general common elements; therefore, plaintiff rightfully held title to the units.[2]

After discovery, both parties moved for summary disposition. Defendant argued that because the units at issue were not identified as "must be built," they were subject to old § 67, and because they were undeveloped and not withdrawn before the 10-year statutory period expired, they reverted to general common elements of the condominium project, leaving plaintiff with no interest in them. Plaintiff argued that because the pertinent condominium documents did not designate the units as "need not be built," old § 67 did not operate to cause them to revert to general common elements; therefore, plaintiff retained interests in the units. Plaintiff further argued that the units at issue were considered site condominiums, which meant that they were considered developed the minute they were recorded, and they could not be considered "undeveloped" as

---

[1] MCL 559.167 was amended by 2016 PA 233, effective September 21, 2016. The amendment does not apply retroactively, *Cove Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, 330 Mich App 679, 697-700; 950 NW2d 502 (2019), and neither party makes any argument to the contrary. This opinion's references to MCL 559.167, except where otherwise specified, are to the preamendment version (old § 67). See 2002 PA 283.

[2] On appeal, plaintiff asserts that it "no longer disputes that the original 52 units of the Condominium were 'air' or 'structure' condominiums." Therefore, the only units at issue are the units that plaintiff alleges are "site condominium" units—units 53-64, which were added by the amendments to the master deed.

required in order to revert them to general common elements under old § 67.[3]  Defendant replied that the Condominium Act, MCL 559.101 *et seq.*, did not distinguish between site condominiums and structure condominiums, and in any event, the condominium project was not a site condominium.

After a motion-hearing, the trial court disagreed with plaintiff's argument that the units were site condominiums and therefore considered developed upon being recorded.  The trial court held that such an interpretation would render the 10-year statutory period to withdraw "undeveloped" units "irrelevant," because as soon as the master deed was recorded, whether or not the units were actually built, they would be considered "developed," and old § 67 would not apply.  The court concluded that, under the plain language of old § 67, because the units at issue had not been withdrawn and remained "unbuilt" after 10 years, "those undeveloped lands shall remain part of the project as a general common element and all rights to construct units upon the land shall cease."  Accordingly, the trial court entered an order granting defendant's motion for summary disposition and denying plaintiff's motion for summary disposition.  Plaintiff now appeals.

## II. SUMMARY DISPOSITION

On appeal, plaintiff argues that the trial court erred by granting summary disposition in defendant's favor because under old § 67, only "undeveloped" units are subject to reversion to general common elements, plus the units at issue were considered "developed" by definition as site condominiums and because the roads and utilities had in fact been developed.  We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Because the parties raised these issues before the trial court, they are preserved for appellate review.[4]  See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008).

"We review de novo a trial court's decision on a motion for summary disposition, reviewing the record in the same manner as must the trial court to determine whether the movant was entitled to judgment as a matter of law." *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012).  "Our review is limited to the evidence that had been presented to the circuit court at the time the motion was decided." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009).  MCR 2.116(C)(10) provides that the trial court may grant summary disposition in favor of the moving party when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."  "In reviewing a motion brought

---

[3] Notably, at the motion-hearing, plaintiff further argued that the units were "developed" because the roads and utilities were complete.

[4] Although defendant takes issue with some of plaintiff's specific arguments not being raised in its initial complaint or motion for summary disposition, each of plaintiff's arguments was presented to the trial court in some manner, whether that be at the motion-hearing or in the briefs exchanged beforehand.  Accordingly, plaintiff's interrelated arguments were all raised before the trial court.

under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012). "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ." *Id*. at 270-271 (quotation marks and citation omitted).

"Issues of statutory interpretation are reviewed de novo." *City of Riverview v Sibley Limestone*, 270 Mich App 627, 630; 716 NW2d 615 (2006). "Also, the interpretation of a contract is a question of law reviewed de novo on appeal, including whether the language of a contract is ambiguous and requires resolution by the trier of fact." *Reed v Reed*, 265 Mich App 131, 141; 693 NW2d 825 (2005). "The goal of contract interpretation is to determine and enforce the parties' intent on the basis of the plain language of the contract itself." *Bayberry Group, Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 393; 964 NW2d 846 (2020) (quotation marks and citation omitted). "The words of a contract are interpreted according to their plain and ordinary meaning, and this Court gives effect to every word, phrase, and clause while avoiding interpretations that would render any part of the document surplusage or nugatory." *Id*. (quotation marks and citation omitted). "An unambiguous contract must be enforced according to its terms." *Reed*, 265 Mich App at 141.

## B. ANALYSIS

Old § 67 provides, in relevant part, as follows:

> Notwithstanding section 33, *if the developer has not completed development and construction of units or improvements in the condominium project that are identified as "need not be built" during a period ending 10 years after the date of commencement of construction by the developer of the project*, the developer, its successors, or assigns have the right to withdraw from the project all undeveloped portions of the project not identified as "must be built" without the prior consent of any co-owners, mortgagees of units in the project, or any other party having an interest in the project. If the master deed contains provisions permitting the expansion, contraction, or rights of convertibility of units or common elements in the condominium project, then the time period is 6 years after the date the developer exercised its rights with respect to either expansion, contraction, or rights of convertibility, whichever right was exercised last. The undeveloped portions of the project withdrawn shall also automatically be granted easements for utility and access purposes through the condominium project for the benefit of the undeveloped portions of the project. *If the developer does not withdraw the undeveloped portions of the project from the project before expiration of the time periods, those undeveloped lands shall remain part of the project as general common elements and all rights to construct units upon that land shall cease*. [MCL 559.167(3), as amended by 2002 PA 283 (emphasis added).]

Accordingly, upon the expiration of the statutory 10-year period, undeveloped units that have not been withdrawn from a condominium project automatically revert to general common elements of the condominium project, and all rights to develop upon that land terminate. See old § 67.

In this case, there is no question that the subject units were not designated as "must be built," were in fact never built, and were not timely withdrawn under old § 67. Nevertheless, plaintiff asks that we find that the units were "developed" for the purposes of old § 67.

## 1. SITE CONDOMINIUM

Plaintiff first argues that the trial court erred by granting summary disposition in defendant's favor because the units at issue were considered "developed" by definition as site condominiums. We disagree.

The Condominium Act does not specifically define "site condominium," nor do the condominium documents in this case. Our Supreme Court has described "site condominium" as follows:

> "Site condominium" is not a term defined under the [Michigan Zoning Enabling Act], but it has been described " 'as a method of building "subdivisions" without officially subdividing land.' . . . The single family residence type of site condo can resemble either a traditional subdivision home or a detached condominium. The difference depends on what use the owner has of the immediate lot on which the building sits." Comment, *Site Condominiums: Fast Homes, For A Price*, 6 Cooley L Rev 511, 512 (1989), quoting Wynant & Williams, *Site Condos: A Quiet Revolution*, 1988 Plan & Zoning News 5, 5 (1988). [*Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, 509 Mich 561, 571 n 4; 983 NW2d 798 (2022).]

The Court then defined "site condominium *unit*" in accordance with the definition of "condo-minium *unit*" in the Condominium Act. See *Saugatuck Dunes Coastal Alliance*, 509 Mich at 571 n 4; MCL 559.104(3).[5]

In this case, plaintiff concedes that the original 52 units were considered "structure condominiums," but argues that the units added by the amendments were considered "site condominiums." Plaintiff explains this significance by stating that structure condominiums cannot exist without a building because the site would simply be an undeveloped portion of land; whereas, site condominiums "exist and are a complete building site irrespective of when or whether any residence or structure is built on the land." Accordingly, plaintiff argues that because the units were site condominiums, and therefore considered "developed" simply by their designation, old § 67 did not apply to revert the units to common general elements, and plaintiff retained its interests in them.

---

[5] MCL 559.104(3) defines "condominium unit" as "that portion of the condominium project designed and intended for separate ownership and use, as described in the master deed, regardless of whether it is intended for residential, office, industrial, business, recreational, use as a time-share unit, or any other type of use."

Plaintiff notes that the master deed described the original 52 units "by the inside surfaces of the parts of the structure that the Developer proposes to build, giving the co-owner of a unit the exclusive use and enjoyment [of] those 'interior surfaces.' " But plaintiff points out that although the first and second amendments repeated the unit-description language from the master deed, they added that "[e]ach Unit shall consist of the space located within Unit boundaries as depicted on Exhibit B hereto together with all appurtenances thereto." According to plaintiff, "Exhibit B" did "not depict or specifically identify building locations, but only site locations,[6] with the Utility Plan emphasizing that 'RESIDENCES AND STRUCTURES TO BE CONSTRUCTED WITHIN UNITS "NEED NOT BE BUILT" SINCE **THE UNITS ALL COMPRISE BUILDING SITES AND NOT STRUCTURES**.' " Plaintiff further argues that the following language from the project's disclosure statement, which was neither part of the condominium documents nor attached to the master deed, specifically described the relevant units as site condominium units:

> Fenton Orchards Attached Unit Condominium is different from most residential condominium projects for this area because the condominium units in this Project consist of only the individual building sites, and the Common Elements do not include the residences and other improvements to be constructed on the sites or appurtenant to the sites as Limited Common Elements. Each condominium unit consists only of the land included within the boundaries of the condominium unit. In the more common form of residential condominium project, the units consist of the air space enclosed within each of the residence units, and the Common Elements include the exterior structural components of the residences.

Defendant argues that plaintiff's reliance on the disclosure statement is misplaced because it: (1) is dated a year and a half before the first and second amendments were recorded, and (2) clearly states that it "IS NOT A SUBSTITUTE FOR THE MASTER DEED." Defendant further argues that the clear language of the condominium documents identified the units as structure condominiums, not site condominiums. Defendant first points to the language used in the utility plans of the first and second amended subdivision plans, which described the additional units as being within a building, stating "EACH FOUR UNIT BUILDING IS SERVED BY AN INDIVIDUAL WELL." Defendant next points to the depictions titled "typical floor plan and profiles," which were attached to the original master deed and the first amendment to the master deed, and displayed floor plans for the units with specific areas labeled as general common elements. Defendant further asserts that the language used in the project's bylaws also revealed that the units at issue contained general common elements and that defendant was responsible for maintaining, repairing, replacing, and insuring the common elements. Defendant also argues that to accept plaintiff's characterization of the units at issue as site condominiums would render certain

---

[6] Exhibit B to the first amendment contained pictures of site locations as well as a depiction of the "typical floor plan and profiles." Exhibit B to the second amendment only contained pictures of site locations.

provisions of the condominium documents meaningless and the condominium project as a whole unmanageable.

We are persuaded by defendant's arguments. Giving effect to every word, phrase, and clause within the master deed, amendments to the master deed, and the project's bylaws, the units at issue were not site condominiums. See *Bayberry Group, Inc*, 334 Mich App at 393.

Defendant convincingly points out the fallacy of plaintiff's arguments by discussing how hypothetical site condominium owners could not coexist with the other traditional condominium owners under the plain language of the master deed and bylaws. The master deed and bylaws define responsibilities in relation to the general common elements, including that each co-owner must pay assessments for their maintenance, repair, and replacement. To interpret the condominium documents as creating both structure condominiums and site condominiums would render certain language in the condominium documents meaningless; it would also create an unmanageable situation for defendant and any traditional condominium co-owners regarding the maintenance, repair, and replacement of structural components. As defendant explains, any hypothetical site condominium co-owners, having sole ownership of the lot, would be solely responsible to pay such assessments, but the condominium documents offer no guidance as to how the site condominium co-owners would be assessed for the maintenance, repair, or replacement of "structural components such as shared walls or roofs," including how such "responsibilities would be divided among site condominium Co-owners of the four Units located with[in] a building," as stated in the first and second amended utility plans. Moreover, the bylaws provide that "[u]npaid assessments shall constitute a lien on the unit," which defendant may enforce collection on; however, as defendant explains, there are no "enforcement or collection remedies available to the site Unit Co-owners if a Co-owner within the four-Unit building refuses to pay a proportionate share for the maintenance, repair, and replacement of shared structural components in the building such as shared walls or the roof."

Additionally, the master deed, first amendment, and second amendment all provide that the percentage value for each of the units remains equal, meaning that all the units must be charged the same assessments. As defendant explains, if the units at issue were site condominiums, the co-owners of those units would be required to pay for the maintenance, repair, and replacement of the general common elements for the original 52 units, in addition to being solely responsible for the maintenance, repair, and replacement of the structural components of their own units, which would result in a disproportionate division of assessments between all units.

Accordingly, the trial court did not err by finding that the units were not site condominiums, and therefore, not considered "developed" on this basis.

## 2. CONSTRUCTION OF GENERAL COMMON ELEMENTS

Plaintiff further argues that the trial court erred by granting summary disposition in defendant's favor because the units at issue were considered "developed" as the roads and utilities had in fact been installed. We disagree.

In *Elizabeth Trace Condo Ass'n v American Global Enterprises, Inc*, 340 Mich App 435, 446; 986 NW2d 412 (2022), this Court held that beginning construction on general common

elements, such as "roads, sidewalks, [and] water systems," was insufficient to consider the units as "developed" under old § 67.

Although defendant argues that the roads and utilities had been *completed*, and not just *begun* in this case, there is no record evidence of such. The only evidence introduced concerning the common-elements' construction was: (1) a brief statement in plaintiff's answer to defendant's motion for summary disposition, indicating that the roads and utilities were built; and (2) plaintiff counsel's brief statement at the motion-hearing, indicating "All the roads are in. All of the utilities are in . . . ." There are no pictures, graphs, affidavits, or the like proving the construction of any roads or utilities. Accordingly, the trial court did not err by determining that the units were not considered "developed" on this basis.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Sima G. Patel
/s/ Kathleen A. Feeney